1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                     FOR THE EASTERN DISTRICT OF CALIFORNIA

8    MIKE WESLEY,

9            Plaintiff,                        No. CIV S-04-2346 GGH

10           vs.

11   JO ANNE B. BARNHART,
     Commissioner of Social
12   Security,
                                                       ORDER
13
             Defendant.
14   _____/

15           Plaintiff seeks judicial review of a final decision of the Commissioner of Social

16   Security ("Commissioner") denying plaintiff's application for Supplemental Security Income

17   ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons that follow,

18   plaintiff's Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross

19   Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the

20   Commissioner.

21   BACKGROUND

22           Plaintiff, born June 5, 1958, applied for disability benefits on December 19, 2000.

23   (Tr. at 96, 98.)  Plaintiff alleged he was unable to work since July 1, 1995, due to back problems,

24   broken hip, liver damage, bleeding ulcers, hemorrhoids, psoriasis, stress, and Hepatitis C.  (Tr. at

25   77, 85, 90, 96.)  In a decision dated August 29, 2002, ALJ Mark C. Ramsey determined that

26   plaintiff was not disabled.  (Tr. at 36-44.)   The Appeals Council granted plaintiff's request for

1   review and remanded the matter to ALJ Acevedo-Torres who held a second hearing and issued a

2   decision on July 22, 2003, determining that plaintiff was not disabled.[1]  The ALJ made the

3   following findings:

> 1.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2.   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
>
> 3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
>    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
>    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

5.   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).

6.   The claimant has the residual functional capacity for a light level of exertion.  He can lift 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk six hours during a workday.  He is limited to occasional bending, stooping and crouching.  He is limited to simple, unskilled work dealing with objects rather than with people.  He should not be exposed to heights.

7.   The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

8.   The claimant is a "younger individual" (20 CFR § 416.963).

9.   The claimant has "a limited education" (20 CFR § 416.964).

10.  The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

11.  The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR § 416.967).

12.  Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rules 202.17-.19, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13.  The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations.  Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920 (f)).

(Tr. at 24-25.)

\\\\\

\\\\\

1  ISSUES PRESENTED

2        Plaintiff has raised the following issues: (A) Whether the ALJ Failed to Address

3  All Limitations Imposed by the Psychiatric Consultative Examiner; and (B) Whether the ALJ

4  Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual

5  Functional Capacity.

6  LEGAL STANDARDS

7        The court reviews the Commissioner's decision to determine whether (1) it is

8  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

9  the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

10  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

11  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

12  accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

13  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

14  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

15  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

16  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

17  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

18  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

19  ANALYSIS

20     A.  Whether the ALJ Addressed All Limitations Imposed by the Psychiatric Consultative

21  Examiner

22        Plaintiff contends that the ALJ did not discuss all of the limitations imposed by

23  Dr. Young, a consultative psychiatrist, particularly his statement that plaintiff's "depressive

24  symptoms would get in the way of his completing a normal workday and dealing with the usual

25  stress." (Tr. at 211.)  This limitation was supported by the non-examining state agency

26  psychiatrists, according to plaintiff.

4

1    The weight given to medical opinions depends in part on whether they are

2 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

3 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

4 more weight is given to the opinion of a treating professional, who has a greater opportunity to

5 know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

6 Cir. 1996).

7    To evaluate whether an ALJ properly rejected a medical opinion, in addition to

8 considering its source, the court considers whether (1) contradictory opinions are in the record;

9 and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

10 a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

11 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

12 be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

13 professional's opinion generally is accorded superior weight, if it is contradicted by a supported

14 examining professional's opinion (supported by different independent clinical findings), the ALJ

15 may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

16 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The regulations require the ALJ to

17 weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

18 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

19 supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

20

---

21    [2]  The regulations differentiate between opinions from "acceptable medical sources" and
    "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
22    psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
23    when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
    regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
24    accordingly are given less weight than opinions from "acceptable medical sources."

25    [3]  The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26    (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1   (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

2   881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

3   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4           In this case, the ALJ rejected Dr. Young's opinion regarding plaintiff's ability to

5   work on a consistent basis.  He stated,

6         [Dr. Young] noted that the claimant has dysthymic disorder with a
      GAF rating of 45 with nervousness around people in the work

7         environment.  There were problems completing a normal workday
      and dealing with ordinary stresses due to depression.  The

8         undersigned cannot accept the doctor's finding that the claimant
      would have difficulty performing work activities on a consistent

9         basis due to problems with motivation.  Motivational problems are
      non-medical and do not constitute a legitimate reason for disability.

10        Giving the claimant the benefit of the doubt, the undersigned finds
      that the claimant can perform simple, unskilled work dealing with

11        objects rather than people.

12  (Tr. at 22.)

13          Dr. Young examined plaintiff on January 20, 2001, diagnosing dysthymic

14  disorder, but found that it was treatable. (Tr. at 210.)  He stated that the prognosis was fairly

15  guarded, however, because plaintiff was unmotivated and withdrawn.  (Id.)  He also questioned

16  plaintiff's claimed alcohol use of a few times per year, and thought it contributed to plaintiff's

17  depression.  (Id. at 208, 210.)  Dr. Young opined that although plaintiff could manage his own

18  funds, perform simple and repetitive tasks and probably also detailed and complex tasks, could

19  deal well with coworkers, supervisors and the public, his depression would interfere with

20  completion of a normal work day due to normal stress involved.  (Id. at 211.)  Additionally, this

21  psychiatrist predicted that plaintiff would easily return to alcohol abuse when confronting the

22  usual stresses of work.  (Id.)

23          The DDS evaluated plaintiff on September 27, 2000 and June 12, 2001.

24  Plaintiff's evaluation did not change significantly between these two report periods.  The latter

25  report assessed plaintiff's residual functional capacity based on his mental state.  Dr. Bible found

26  that plaintiff was not significantly limited in his ability to remember locations and procedures,

and understand and carry out short and simple instructions.  (Tr. at 251.)  Plaintiff was

moderately limited in understanding and carrying out detailed instructions, maintaining attention

and concentration for extended periods, work with others without being distracted, complete a

normal work day and week without interruption and perform at a consistent pace, interact

appropriately with the general public, get along with coworkers without distracting them,

maintain socially appropriate behavior, as well as respond appropriately to changes in the work

setting.  (Tr. at 251-52.)  Plaintiff was not significantly limited in his ability to work in a

schedule, maintain attendance, and be punctual, sustain a routine without special supervision,

make simple work-related decisions, ask simple questions or request assistance, respond

appropriately to criticism, be aware of normal hazards, travel to unfamiliar places, and set

realistic goals or make plans independently of others.  (Id.)  These findings were based on

dysthymia and substance addiction disorder.  (Tr. at 255, 258.)

    Also at this time, the DDS found plaintiff to be moderately limited in activities of

daily living, maintaining social functioning, and maintaining concentration, persistence or pace.

(Id. at 265.)  This report was apparently based on Dr. Young's evaluation.  (Tr. at 269.)  The

conclusion was that plaintiff would be unable to put in an eight hour day or forty hour week.  (Id.

at 270.)

    There are no other psychiatric records (treatment or otherwise) in the file.  To

state plaintiff's hypothesis is to state the grounds which call for its rejection.  According to

plaintiff, he desires lifetime disability benefits for a depression diagnosed in a one shot consultant

visit during the course of a disability administrative process, and for which depression plaintiff

never sought treatment before or after the one-shot visit.  No disability system funded with finite

funds could ever withstand such a standard for benefits.  Although plaintiff apparently has

depression, it is treatable.  Lack of motivation to obtain treatment for a generally treatable

\\\\\

\\\\\

condition cannot stand as a basis upon which to find disability.[4]  The ALJ was correct in finding

that lack of motivation cannot be a reason to obtain disability benefits.  Plaintiff has to make at

least some effort to obtain treatment, but he has not done so.  SSR 82-59 provides in relevant part

(emphasis added):

> Individuals with a disabling impairment which is amenable to treatment that could be
> expected to restore their ability to work must follow the prescribed treatment to be found
> under a disability, <u>unless there is a justifiable cause for the failure to follow such
> treatment</u> ...[5]

\\\\\

---

[4]  <u>See</u>, National Institute of Mental Health, *Depression: A Treatable Illness*,
http://menanddepression.nimh.gov/infopage (2004).

[5]   The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20 C.F.R. §
404.1530 under Title II) similarly provides:

> (b) When you do not follow prescribed treatment.  If you do not follow the prescribed
> treatment without a good reason, we will not find you disabled ...

Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for
declining to following prescribed treatment, none of which are present here.

20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for
declining to following prescribed treatment:

> (1) The specific medical treatment is contrary to the established
> teaching and tenets of your religion.
> (2) The prescribed treatment would be cataract surgery for one eye when
> there is an impairment of the other eye resulting in a severe loss of vision
> and is not subject to improvement through treatment.
> (3) Surgery was previously performed with unsuccessful results and the
> same surgery is again being recommended for the same impairment.
> (4) The treatment because of the enormity (e.g. open heart surgery),
> unusual nature (e.g. organ transplant), or other reason is very risky
> for you; or
> (5) The treatment involves amputation of an extremity, or a major
> part of an extremity.

Additional acceptable reasons for declining to following prescribed treatment set forth in
SSR 82-59 are:

> (1) Fear of surgery;
> (2) Inability to pay for prescribed treatment;
> (3) A medical source has advised against the treatment.

1      None of the acceptable justifications for failure to seek widely available treatment
2   are raised here.  Without any efforts by plaintiff, the court cannot find that he is unable to work
3   based on this impairment.

4      Furthermore, plaintiff's argument that the DDS evaluation supported Dr. Young's
5   assessment is of little merit because that report was based on this psychiatrist's assessment, and
6   was not independent of it.  (Tr. at 269.)

7      The ALJ also discounted any suggestion of alcohol or drug use as a contributing
8   factor, finding that based on plaintiff's testimony that he has not recently used these substances
9   except for an occasional beer was substantiated by the record medical evidence.  (Tr. at 22.)  See
10  Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001) (setting forth procedure to be used in
11  determining whether alcoholism or drug addiction is a contributing factor material to disability).
12  In May, 2002, plaintiff was hospitalized for a persistent fever, chest pain, shortness of breath, and
13  weakness.  (Tr. at 275.)  He stated he had been binge drinking for the last four months after going
14  years without alcohol.  (Id.)  His testimony at the second hearing on June 2, 2003, was that he no
15  longer drinks alcohol, except for an occasional beer.  (Tr. at 325.)  The binging episode appears
16  to be episodic in nature, relating to some family deaths around that time.  (Tr. at 276.)  Without
17  evidence to the contrary, other than speculation that plaintiff may not be entirely truthful in
18  regard to the extent of his alcohol use, the court must rely on his testimony regarding his most
19  current habits.  The court finds that the ALJ correctly concluded that alcohol use was not a
20  contributing factor.

21  B.  Whether the ALJ Should Have Used the Testimony of a Vocational Expert in
22  Determining Plaintiff's Residual Functional Capacity

23      Plaintiff contends that the ALJ should have utilized a vocational expert because
24  plaintiff has nonexertional limitations of limited ability to work with others and maintain regular
25  attendance that cannot be addressed by the grids.

26  \\\\\

1          The Guidelines in table form ("grids") are combinations of residual functional

2  capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the

3  grids determine if other work is available.  See generally Desrosiers v. Secretary of Health and

4  Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

5          The grids may be used if a claimant has both exertional and nonexertional

6  limitations, so long as the nonexertional limitations do not significantly impact the exertional

7  capabilities.[6]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

8  Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  The ALJ, however, is not

9  automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional

10  limitation.  Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged

11  does not automatically preclude application of the grids.");  20 C.F.R. pt. 404, subpt. P, app. 2, §

12  200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience,

13  education, and psychological and physical impairments to determine whether a nonexertional

14  limitation significantly limits plaintiff's ability to work in a certain category.  Desrosiers, 846

15  F.2d at 578 (Pregerson, J., concurring).  "A non-exertional impairment, if sufficiently severe,

16  may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such

17  a case, the guidelines would be inapplicable."  Desrosiers, 846 F.2d at 577-78.  The ALJ is then

18  required to use a vocational expert.  Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

19          In this case, the ALJ concluded that plaintiff was not disabled at step five of the

20  analysis, and that he could do the full range of light work which was simple, unskilled, and

21

22          [6]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary;
23  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include
mental, sensory, postural, manipulative and environmental matters which do not directly affect
24  the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper,
880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has
25  an impairment that limits his or her ability to work without directly affecting his or her strength,
the claimant is said to have nonexertional (not strength-related) limitations that are not covered
26  by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1   involved dealing with objects rather than people.  (Tr. at 22-24.)

2          Here, the ALJ properly found that the two limitations alleged by plaintiff do not

3   significantly limit his ability to do light work.  First, the limitation on ability to work with people

4   is resolved by the finding that plaintiff can do light work.  The ALJ specifically referred to Social

5   Security Ruling 85-15 in noting that unskilled jobs naturally encompass the limitation of working

6   with objects rather than people.  (Tr. at 23.)

7          Second, in regard to plaintiff's claimed inability to work a full week, the ALJ

8   already discounted this part of Dr. Young's opinion because lack of motivation to seek treatment

9   is not a legitimate reason for disability.  See discussion *supra* section A.

10  CONCLUSION

11         In sum, the court finds the ALJ's assessment is fully supported by substantial

12  evidence in the record or based on the proper legal standards.  Accordingly, plaintiff's Motion for

13  Remand or Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

14  Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

15  DATED: 6/12/06

                                          /s/ Gregory G. Hollows
16                                        _____
                                          GREGORY G. HOLLOWS
17                                        U.S. MAGISTRATE JUDGE

    GGH/076
18  Wesley2346.ss.wpd

19

20

21

22

23

24

25

26